UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

TION ALONZO HILL,[1]

Petitioner,

v.

ERIC ARNOLD, Warden,

Respondent.

No. 2:17-cv-02200-TLN-AC

**ORDER**

This matter is before the Court on Petitioner Tion Alonzo Hill's ("Petitioner") First Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.[2]  (ECF Nos. 1, 11.) Respondent Eric Arnold ("Respondent") filed an answer to the amended petition (ECF No. 19), and Petitioner filed an opposition/traverse to the answer (ECF No. 26).  For the reasons discussed herein, the amended petition is DENIED.

///

///

---

[1]      Also known as: Tion Alonzo Grimmett Hill, Sr.

[2]      The Court granted Petitioner's motion to file an amended petition to add one additionally exhausted claim on October 8, 2019.  (ECF No. 16.)  Rather than a standalone filing, the amended petition (ECF No. 11) merely refers to the original petition with respect to the legal arguments in support of Petitioner's first five claims.  To the extent such arguments are incorporated by reference by the parties, the Court also refers to the original petition (ECF No. 1).

1

1

## I.     FACTUAL AND PROCEDURAL BACKGROUND[3]

2      On May 29, 2012, a Solano County jury convicted Petitioner of second-degree murder and

3 attempted arson and found true the enhancement that Petitioner personally and intentionally

4 discharged a firearm causing death.  (ECF No. 1 at 26; ECF No. 19-21 at 11.)  The trial court

5 found the prior conviction allegations true and sentenced Petitioner to a term of 68 years to life in

6 state prison.  (ECF No. 19-21 at 11–12.)

7      Petitioner appealed the conviction.  (ECF No. 19-18.)  On January 25, 2017, the California

8 Court of Appeal affirmed the conviction.  (*Id.* at 53.)  Petitioner filed a petition for review with

9 the California Supreme Court.  (*Id.* at 55–149.)  On May 10, 2017, the California Supreme Court

10 denied review.  (*Id.* at 151.)

11      Petitioner filed his original habeas petition in this Court on October 20, 2017.  (ECF No.

12 1.)  On September 19, 2019, Petitioner filed a motion to amend his petition and a proposed first

13 amended petition.  (ECF No. 11.)  On October 8, 2019, the Court granted Petitioner's motion,

14 directing Respondent to respond to the claims in the first amended petition.  (ECF No. 16.)  On

15 December 6, 2019, Respondent filed an answer to the amended petition.  (ECF No. 19.)  On

16 January 9, 2020, Petitioner filed his opposition/traverse to the answer.  (ECF No. 26.)

17

## II.     STANDARD OF LAW

18      A petition for a writ of habeas corpus is governed by the Antiterrorism and Effective

19 Death Penalty Act of 1996 ("AEDPA'').  This Court may entertain a petition for a writ of habeas

20 corpus by a person in custody under a judgment of a state court only for violations of the

21 Constitution or laws of the United States.  28 U.S.C. § 2254(a).  On federal habeas review,

22 AEDPA "imposes a highly deferential standard for evaluating state-court rulings" and "demands

23 that state-court decisions be given the benefit of the doubt."  *Renico v. Lett*, 559 U.S. 766, 773

24 (2010) (internal quotation marks omitted).  Indeed, the Supreme Court has vigorously and

25 repeatedly affirmed that under AEDPA, there is a heightened level of deference a federal habeas

26

27      [3]     All citations to the underlying state records and exhibits are referenced herein by their
ECF pagination.

28

2

court must give to state court decisions.  *See Hardy v. Cross*, 565 U.S. 65, 66 (2011) (per curiam); *Harrington v. Richter*, 562 U.S. 86, 97–100 (2011); *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011).  Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably."  *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit precedent may not "be used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced."  *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013).  Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct."  *Id.*  Further, where courts of appeal have diverged in their treatment of an issue, it cannot be said there is "clearly established Federal law" on that issue.  *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

3

precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004). Nonetheless, under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)). A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411; *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its 'independent review of the legal question,' is left with a "'firm conviction'" that the state court was "'erroneous'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a *de novo* review of a habeas petitioner's claims. *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The Court looks to the last reasoned state court decision as the basis for the state court judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).  If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this Court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington*, 562 U.S. at 99.  This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 99–100 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).  Similarly, when a state court decision on the petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, 568 U.S. 289, 298 (2013) (citing *Harrington*, 562 U.S. at 98).  If a state court fails to adjudicate a component of the petitioner's federal claim, the component is reviewed *de novo* in federal court. *Wiggins v. Smith*, 539 U.S. 510, 534 (2003).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not *de novo* review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853.  Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. *Stancle v. Clay*, 692 F.3d 948, 957 n.3 (9th Cir. 2012).  While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny

5

1 | relief." *Harrington*, 562 U.S. at 98.  This Court "must determine what arguments or theories . . .

2 | could have supported the state court's decision; and then it must ask whether it is possible

3 | fairminded jurists could disagree that those arguments or theories are inconsistent with the

4 | holding in a prior decision of [the Supreme] Court." *Id.* at 101.  The petitioner bears "the burden

5 | to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" *Walker v.*

6 | *Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Harrington*, 562 U.S. at 98).

7 | When it is clear, however, that a state court has not reached the merits of a petitioner's

8 | claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

9 | habeas court must review the claim *de novo*.  *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462

10 | F.3d 1099, 1109 (9th Cir. 2006).

11 | **III.  ANALYSIS**

12 | The amended petition raises the following claims for relief: (1) the prosecutor's improper

13 | use of a peremptory challenge; (2) juror misconduct in considering Petitioner's exercise of his

14 | right not to testify; (3) juror misconduct in considering outside expert testimony regarding firearm

15 | mechanics; (4) the trial court's failure to instruct on voluntary intoxication; (5) the trial court's

16 | improper coercion of a verdict; and (6) the trial court's erroneous denial of Petitioner's petition

17 | for resentencing pursuant to California Penal Code § 1170.95.  (ECF No. 11.)  The Court will

18 | address each claim in turn.

19 | A.   Improper Peremptory Challenge

20 | In his first claim for relief, Petitioner asserts the state court erred in concluding the

21 | prosecutor's peremptory challenge of an African American juror ("E.T.") during jury selection

22 | did not constitute purposeful, racial discrimination in violation of *Batson v. Kentucky*, 476 U.S.

23 | 79 (1986) and *People v. Wheeler*, 22 Cal. 3d 258 (1978) (*Batson/Wheeler*).  (ECF No. 11 at 6; *see*

24 | *also* ECF No. 1 at 27–36.)  Petitioner further argues the prosecutor's challenge of E.T. was

25 | discriminatory on its face, therefore requiring a review of the trial court's credibility and a *de*

26 | *novo* comparative analysis of the jurors.  (*See* ECF No. 1 at 27–36.)  Respondent argues the trial

27 | court's rejection of Petitioner's *Batson/Wheeler* claim was reasonable because there was no prima

28 | facie case of purposeful discrimination where only one African American juror was struck but at

6

least three other African American jurors remained on the panel.  (ECF No. 19-1 at 21–25.)
Further, Respondent argues Petitioner has not rebutted the trial court's determination that he
failed to establish a prima facie case for discrimination, which is entitled to a statutory
presumption of correctness under § 2254(d), *Tolbert v. Page*, 182 F.3d 677, 685 (9th Cir. 1999)
(en banc), therefore the *Batson/Wheeler* inquiry ends at the first stage of review.  (*See id.*)

### i.  Applicable Federal Law

The "clearly established federal law" central to this claim is *Batson*.  Under *Batson*, the
Supreme Court found the Equal Protection Clause of the Fourteenth Amendment forbids the use
of peremptory challenges to exclude potential jurors solely on the basis of race.  *Batson*, 476 U.S.
at 89.  The California Supreme Court's decision in *Wheeler* is the California state counterpart to
*Batson*.  *Yee v. Duncan*, 463 F.3d 893, 896 (9th Cir. 2006); *see also Castellanos*, 766 F.3d at
1146 (citing *Fernandez v. Roe*, 286 F.3d 1073, 1075 (9th Cir. 2002)) (holding *Batson* and
*Wheeler* are "procedurally equivalent").  However, it is the standards of *Batson* that control the
disposition of Petitioner's claim on federal habeas corpus review.  *Lewis v. Lewis*, 321 F.3d 824,
827 (9th Cir. 2003).

The *Batson* framework for evaluating claims that a prosecutor has used peremptory
challenges in a manner violating the Equal Protection Clause is well established.  First, the
defendant must make a prima facie showing that the prosecution exercised a peremptory
challenge on the basis of race.  *Batson*, 476 U.S. at 96.  Second, if a defendant makes this prima
facie showing, the burden then shifts to the prosecution to provide a neutral explanation for its
challenge.  *Id.* at 97.  Third and finally, "[t]he trial court will then have the duty to determine if
the defendant has established purposeful discrimination."  *Id.* at 98.  At this third step, the court
must evaluate the credibility of the prosecutor's proffered justifications to determine whether they
are genuine.  *Purkett v. Elem*, 514 U.S. 765, 769 (1995).

To establish a prima facie case of discrimination under *Batson's* first step, the defendant
must show: (1) the prospective juror is a member of a cognizable racial group; (2) the prosecutor
used a peremptory strike to remove the juror; and (3) the totality of the circumstances raises an
inference that the strike was on account of race.  *Batson*, 476 U.S. at 96; *Crittenden v. Ayers*, 624

1    F.3d 943, 955 (9th Cir. 2010).  If a defendant does not establish a prima facia case, the

2    defendant's challenge fails and the prosecution is not required to provide a "race-neutral"

3    explanation for the strike.  *U.S. v. Collins*, 551 F.3d, 914, 919 (9th Cir. 2009) (internal quotation

4    marks and citation omitted).

5            However, once a prima facie case has been established, "the burden of production shifts to

6    the proponent of the strike to come forward with a race-neutral explanation" for the strike.

7    *Purkett*, 514 U.S. at 767.  At this second step of the *Batson* analysis, the prosecution's

8    explanation need not be "persuasive, or even plausible."  *Id.* at 768.  Rather, a neutral explanation

9    in this context "means an explanation based on something other than the race of the juror."

10   *McClain v. Prunty*, 217 F.3d 1209, 1220 (9th Cir. 2000) (quoting *Hernandez v. New York*, 500

11   U.S. 352, 360 (1991)).  As with any credibility determination, the trial court's own observations

12   are of significant importance.  *Batson*, 476 U.S. at 98, n. 21; *see also Lewis*, 321 F.3d at 830.

13           Finally, if the prosecutor offers a race-neutral explanation, the trial court must decide

14   whether the defendant has proved the prosecutor's motive for the strike amounts to purposeful

15   racial discrimination.  *Murray v. Schriro*, 745 F.3d 984, 1003 (9th Cir. 2014); *Purkett*, 514 U.S. at

16   768.  This issue turns on whether the trial court finds the prosecutor's race-neutral explanations to

17   be credible based on the totality of the relevant facts.  *Id.*; *see also Murray*, 745 F.3d at 1003;

18   *Lewis*, 321 F.3d at 830.  "Credibility can be measured by, among other factors, the prosecutor's

19   demeanor; by how reasonable, or how improbable, the explanations are; and by whether the

20   proffered rationale has some basis in accepted trial strategy."  *Miller-El v. Cockrell*, 537 U.S. 322,

21   339 (2003) ("[I]mplausible or fantastic justifications may (and probably will) be found to be

22   pretexts for purposeful discrimination."); *see also Purkett*, 514 U.S. at 768 (court should consider

23   whether prosecutor's justifications are contrary to the evidence in the record or based on

24   mischaracterizations of a prospective juror's testimony).  As part of its evaluation of the

25   prosecutor's reasoning, the court must conduct a comparative juror analysis — that is, it must

26   conduct a side-by-side comparison of African American panelists who were struck with those

27   non-African American panelists who were allowed to serve.  *Miller-El v. Dretke* (*Miller-El II*),

28   545 U.S. 231, 241 (2005)).  "If a prosecutor's proffered reason for striking a black panelist

8

1    applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence

2    tending to prove purposeful discrimination to be considered at *Batson's* third step." *Id.*

3         Ultimately, the defendant has the burden of persuading the court that the strike was

4    racially motivated and may only obtain habeas relief by showing the state court's conclusion that

5    the prosecutor's race-neutral explanations were true to be "objectively unreasonable in light of the

6    evidence presented in the state-court proceeding." *Rice v. Collins*, 546 U.S. 333, 338 (2006); *see*

7    *also Snyder v. Louisiana*, 552 U.S. 472, 476–82 (2008) ("Because determinations of credibility

8    and demeanor of the prosecutor and jurors lie peculiarly within [the] trial judge's province, the

9    trial court's ruling on the issue of discriminatory intent is entitled to great deference and must be

10   sustained unless clearly erroneous."); *Purkett*, 514 U.S. at 769 (the findings of the state court on

11   the issue of discriminatory intent are findings of fact entitled to the presumption of correctness in

12   federal habeas review); *Felkner*, 562 U.S. at 596–98 (reversing Ninth Circuit's "inexplicable" and

13   "unexplained" finding that proffered race-neutral explanations for peremptory strikes were

14   insufficient to outweigh evidence of purposeful discrimination).

15                              *ii.      Analysis*

16         In affirming the trial court's denial of Petitioner's *Batson* motion, the appellate court

17   concluded there was no prima facie case of purposeful discrimination and ended its review at the

18   first *Batson* step in accordance with the California Supreme Court case, *People v. Scott*, 61 Cal.

19   4th 363 (2015).[4]  *Hill*, 2017 WL 360563, at *8.  However, clearly established law under the

20   United States Supreme Court requires that, "[o]nce a prosecutor has offered a race-neutral

21   explanation for the peremptory challenges and the trial court has ruled on the ultimate question of

22

23   ───────────────
     [4]      In declining to evaluate the remaining steps under *Batson*, the Court of Appeal stated,

24   "Where, as here, '(1) the trial court has determined that no prima facie case of discrimination
     exists, (2) the trial court allows or invites the prosecutor to state his or her reasons for excusing

25   the juror for the record, (3) the prosecutor provides nondiscriminatory reasons, and (4) the trial
     court determines that the prosecutor's nondiscriminatory reasons are genuine, an appellate court

26   should begin its analysis of the trial court's denial of the *Batson/Wheeler* motion with a review of
     the first-stage ruling.  [Citations.]  If the appellate court agrees with the trial court's first-stage

27   ruling, the claim is resolved.  If the appellate court disagrees, it can proceed directly to review of
     the third-stage ruling, aided by a full record of reasons and the trial court's evaluation of their

28   plausibility.'"  *Hill*, 2017 WL 360563, at *6 (citing *Scott*, 61 Cal. 4th at 391).

                                          9

intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." *Hernandez*, 500 U.S. at 359.  Thus, a federal habeas court need not dwell on the first step of the *Batson* analysis if the matter has proceeded to the second or third step.

Here, the record indicates Petitioner raised his *Batson* challenge immediately after the prosecution used a peremptory challenge on E.T., requested the prosecution "state his entire basis for exercising the peremptory on [E.T.]," and indicated "[he]'d move for a mistrial now."  (ECF No. 19-9 at 218.)  The trial court declined to find a prima facie case "at this time" but invited the prosecution to state his reasons for the challenge, which he did.  (ECF No. 19-9 at 220–21; ECF No. 19-10 at 274.)  But even though the prosecution provided race-neutral reasons for dismissing E.T., the trial court did not perform a comparative analysis and ambiguously denied Petitioner's *Batson* challenge because "those factors . . . stated by the D.A. . . . . raise mutual reasons for the challenge. . ." (ECF No. 19-10 at 276–77.)  In affirming the denial, the appellate court did not conduct a comparative analysis but examined E.T.'s voir dire responses, noted the existence of other African Americans seated as jurors, and found the trial court properly determined Petitioner failed to raise a prima facie case of discrimination.  *Hill*, 2017 WL 360563, at *8–10.

Because the trial court appears to have considered the prosecutor's race-neutral explanations for striking E.T., this Court will proceed directly to the ultimate *Batson* question on whether Petitioner has shown purposeful discrimination.  *See Hernandez*, 500 U.S. at 359. Further, because the state court failed to conduct a comparative juror analysis, such an analysis shall be undertaken *de novo*, rather than by remanding the case to the state courts to do so.  *Green v. LaMarque*, 532 F.3d 1028, 1031 (9th Cir. 2008) (citing *Miller-El II*, 545 U.S. at 241).

Under a *de novo* review, the totality of the circumstances does not raise an inference that the prosecution challenged E.T. on account of his race.  First, no pattern of discrimination can be established based on a statistical disparity.  *See Collins*, 551 F.3d at 921 ("We have found an inference of discrimination where the prosecutor strikes a large number of panel members from the same racial group, or where the prosecutor uses a disproportionate number of strikes against members of a single racial group.") (citation omitted).  At the time of Petitioner's *Batson*

1    objection, the prosecutor had exercised six peremptory challenges — none of which were

2    challenges against prospective African Americans jurors.  (ECF No. 19-4 at 11, 20.)  The record

3    also indicates that, while Petitioner's counsel subsequently exercised further peremptory

4    challenges, the prosecutor did not.  (*See id.*; *see also* ECF No. 19-9 at 221–48.)  Rather, E.T. was

5    the only prospective African American juror that the prosecution challenged, thus accounting for

6    1/7 of the prosecution's peremptory challenges.  With respect to the veniropersons, Petitioner

7    noted "there aren't very many African Americans in this audience.  There are about five more, by

8    my count."[5]  (ECF No. 19-9 at 219.)  Meanwhile, at least three of the final seated jurors were

9    African American.[6]  (*See* ECF No. 19-9 at 220–21; *see also Hill*, 2017 WL 360563, at \*7.)  "The

10   fact that African-American jurors remained on the panel 'may be considered indicative of a

11   nondiscriminatory motive.'"  *McGee v. Kirkland*, 506 F. App'x 588, 591 (9th Cir. 2013) (citing

12   *Gonzalez v. Brown*, 585 F.3d 1202, 1210 (9th Cir. 2009)).  The Court additionally notes that, at

13   the time of the challenge, there was already another African American sitting on the jury (Juror

14   No. 10).  The prosecution had the opportunity to challenge this juror but chose not to do so.  (*See*

15   ECF No. 19-9 at 218 (after Juror No. 10 was seated, the prosecution exercised its peremptory

16   challenges first to challenge prospective juror B.K. and then E.T.)); *see also United States v.*

17   *Chinchilla*, 874 F.2d 695, 698 n. 4 (9th Cir. 1989).  Indeed, at the time Petitioner's counsel made

18   the *Batson* challenge, he acknowledged that "[o]bviously, no pattern can be shown at this time . .

19   ." since E.T. was the first and only prospective African American juror the prosecution

20   challenged and there was already another African American seated on the jury.  (ECF No. 19-9 at

21   219.)  Thus, the prosecution's challenge of a single African American juror in the aforementioned

22

23   [5]       Petitioner also notes that approximately 40 verniropersons were already excused at that
24   point for cause or due to hardships.  The record is silent, however, as to whether any of the prior
     excused veniropersons were African American.  Thus, the Court cannot reach any other statistical
25   conclusions.

26   [6]       The trial court made the factual finding on the record that at least three jurors — Juror
     Nos. 4, 6, and 10 — were African American.  The prosecution also ambiguously notes seeing
27   "four members of color . . . on the jury" but this statement is never clarified or elaborated upon
     and the Court cannot determine from the record that the fourth jury member was also African
28   American.

1   context does not support an inference of discriminatory motive.

2          Furthermore, the prosecution's stated reasons for the challenge do not support an

3   inference of discrimination.  Namely, the prosecutor noted E.T.'s juror questionnaire comments

4   indicated E.T. thought the criminal justice system was "unfair" and that "evidence [could] be

5   corrupted."  (ECF No. 19-9 at 221.)  When defense counsel questioned E.T. about his answers,

6   E.T. indicated his opinion was largely based on the Trayvon Martin case and unspecified news

7   media reports on the case.  (*See* ECF No. 19-9 at 191–92.)  When the prosecutor also questioned

8   E.T. about these responses, E.T. again provided general responses that the Court of Appeal noted

9   were "somewhat evasive."  *Hill*, 2017 WL 360563, at *9.  However, after additional prodding by

10  the prosecutor, E.T. stated he felt the criminal justice system was unfair based on the Martin case,

11  that he was "jaded," and he "ha[d] questions" about the fact that the defendant ("Neighborhood

12  Watch Captain" George Zimmerman, who was arrested for the fatal shooting of African

13  American teenager Trayvon Martin but ultimately acquitted on a self-defense claim) was "out on

14  bail, without — [unspecified]."[7]  (ECF No. 19-9 at 214–16.)  The Court of Appeal rejected

15  Petitioner's argument that such comments indicated E.T. was "pro-prosecution" (*see* ECF No. 1

16  at 32–35) and instead construed this response through the context of the facts of the Trayvon

17  Martin case to reflect a view that "the criminal justice system is unfair, particularly with respect

18  to its treatment of African Americans."  *Hill*, 2017 WL 360563, at *9.  As such, the Court of

19  Appeal found the view was not a proxy for race but constituted a valid reason for any prosecutor

20  to challenge E.T.  *Id.*; *see also Hernandez*, 500 U.S. at 365 ("The precise formula used for review

21  of factfindings, of course, depends on the context."); *Mitleider v. Hall*, 391 F.3d 1039, 1048 (9th

22  Cir. 2004) (permissible reasons for dismissal included negative impression of the criminal justice

23  system after serving as a juror where the defendant, who the prospective juror had believed was

24  guilty, was acquitted; and view that there are innocent people in jail and guilty people on the

25  streets); *People v. Gray*, 37 Cal. 4th 168, 192 (2005) (skepticism about the fairness of the

26

27  _____

[7]       Petitioner also suggests the prosecution failed to engage African American jurors in more
than *pro forma* voir dire.  (*See* ECF No. 19-9 at 221.)  However, the aforementioned record
28  demonstrates this argument is unsupported.

criminal justice system is a valid ground for dismissing a juror); *People v. Winbush*, 2 Cal. 5th 402, 439 (2017), *as modified on denial of reh'g* (Mar. 29, 2017) (distrust of and skepticism about the fairness of the criminal justice system to indigents and racial minorities are valid race-neutral bases for excusal).  The Court does not find the state court's interpretation of E.T.'s comments to be contrary to the evidence in the record or based on mischaracterizations of a prospective juror's testimony and therefore objectively unreasonable.  *See Purkett*, 514 U.S. at 768; *Miller-El*, 537 U.S. at 339; *see also Anderson v. Bessemer City*, 470 U.S. 564, 574, (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."); *Mitleider*, 391 F.3d at 1048 (trial court not unreasonable in crediting prosecutor's explanations, where record supported reasons and petitioner did not show reasons were pretextual).  Therefore, the prosecutor's stated reasons for the challenge appear race neutral.

Finally, a comparative juror analysis does not prove purposeful discrimination on this record.  Petitioner argues E.T.'s responses that the criminal justice system was "unfair" and "evidence can be corrupt" tend to demonstrate a pro-prosecution bias that compared favorably with Juror No. 12, who remained seated.  Petitioner also argues E.T.'s responses about the unfairness of the justice system were comparable to those of Juror Nos. 8 and 12.  Further, Petitioner argues the prosecutor failed to similarly question Juror Nos. 4 and 11 about their views on the fairness of the justice system, electing instead to give them a "pass."  (ECF No. 1 at 32–36.)  The Court finds Petitioner's arguments are not supported by the record for the following reasons.

As an initial matter, the Court declines to conduct a comparative analysis between E.T. and Juror No. 4 because Juror No. 4 is African American.  Therefore, Petitioner's *Batson* argument is facially without merit with respect to that juror.  *See Miller-El II*, 545 U.S. at 241 (comparative juror analysis requires side-by-side comparison of African American panelist who was struck with non-African American panelist who was allowed to serve).

Similarly, the Court cannot complete an accurate comparative juror analysis between E.T. and Juror No. 11 with respect to Petitioner's argument that the prosecution failed to question Juror No. 11 to the same degree that he questioned E.T. because the only jury questionnaire

provided as a part of the record was E.T.'s.  (*See* ECF No. 19-8.)  Thus, it is unknown what responses Juror No. 11 gave on the juror questionnaire.  Notably, the record indicates that neither Petitioner nor the prosecution asked Juror No. 11 any targeted follow up questions during voir dire.  It is therefore entirely possible that the prosecutor gave Juror No. 11 "a pass" (*see* ECF No. 19-9 at 96) because Juror No. 11 did not provide any questionnaire responses with which he took issue.  Regardless, based on this record, the Court cannot reach a determination that E.T. and Juror No. 11 were similarly situated for purposes of the *Batson* analysis.

Furthermore, the Court rejects Petitioner's representation of E.T.'s responses about the "fairness" of the criminal justice system as being "pro-prosecution" and "pro-law enforcement." Petitioner argues E.T.'s comment that the reasonable doubt burden is unfair to the prosecution because "evidence can be corrupt" is pro-prosecution because it suggests the prosecution should have a lower burden of proof.  (ECF No. 1 at 32–34 (citing ECF No. 19-8 at 7).)  Similarly, Petitioner argues E.T.'s single-word response that his "feelings about the overall fairness and effectiveness of the criminal justice system" was that the system is "unfair" (ECF No. 19-8 at 6) reflected a general pro-prosecution view because E.T. expressed displeasure that the defendant in the Martin case was out on bail.  (ECF No. 1 at 34.)  The Court finds such an interpretation of E.T.'s testimony is reductive, removes it from the applicable context of the Trayvon Martin case which E.T. specifically references, and therefore appears to mischaracterize E.T.'s testimony. Although E.T.'s responses during voir dire about his questionnaire were vague and slightly evasive, it is apparent that E.T.'s viewpoint about the unfairness of the criminal justice system stems from his disappointment that a defendant who shot and killed an African American teenager under questionable circumstances was released "on bail, without — [unspecified]."  (*See* ECF No. 19-9 at 214–16.)  When viewing E.T.'s responses within the context of his opinions regarding the Trayvon Martin case, this Court agrees with the Court of Appeals that such responses reflect a view that "the criminal justice system is unfair, particularly with respect to its treatment of African Americans."  *Hill*, 2017 WL 360563, at *9.

Applying this perspective to the comparative analysis between E.T. and Juror Nos. 8 and 12, it is apparent to this Court E.T.'s view of the justice system is very different from that of Juror

No. 8, who merely complained that the system operated slowly, not unfairly with respect to any specific ethnic minority.  (ECF No. 1 at 34–35.)  Similarly, E.T.'s view differs from that of Juror No. 12, whose concerns related only to individuals who committed minor offenses (which was also inapplicable to Petitioner's case, as he was on trial for murder).  (ECF No. 1 at 35.)  Thus, a side-by-side comparison of E.T. and Juror Nos. 8 and 12 reveals there were legitimate dissimilarities between the prospective jurors from which the prosecutor could honestly believe they were not really "similarly situated."  *Miller–El*, 545 U.S. at 247; *People v. Huggins*, 38 Cal. 4th 175, 233 (2006).  Accordingly, a comparative juror analysis does not uncover any evidence that would support an inference of a discriminatory purpose in the prosecutor's challenge to E.T.

In sum, having considered the prosecutor's proffered reasons and credibility under "the totality of the relevant facts," the Court finds it would not be unreasonable to conclude the prosecutor had legitimate reasons for challenging E.T. and Petitioner had not carried his burden of proving those reasons were pretextual.  Further, because the review of the state court's factual determination was based entirely on information that was contained in the state court record, this Court must defer to the state appellate court's conclusion that there was no discrimination unless that finding was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *See Cook*, 593 F.3d at 816.  It simply cannot be said that the state appellate court's rejection of Petitioner's *Batson* claim was based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(2).  Therefore, Petitioner is not entitled to federal habeas relief on his first claim.

B.     Juror Misconduct

In his second and third claims for relief, Petitioner contends the trial court erred in denying his motion for a new trial based on two purported types of juror misconduct: (1) discussion of Petitioner's failure to testify; and (2) several jurors' discussion outside the record regarding their purported "expert" knowledge regarding firearms.  (ECF No. 11 at 6–7; *see also* ECF No. 1 at 37–44.)  Respondent argues the state court's rejection of the juror misconduct claim relating to Petitioner's failure to testify was reasonable because the limited comments made by jurors were not extrinsic to the trial, the court record indicates the presumption of prejudice was

1    rebutted, and any alleged misconduct was harmless.  (ECF No. 19-1 at 25–36.)  Respondent

2    argues the court's rejection of Petitioner's claim relating to jurors' purported "expert" opinion

3    discussion on firearms was reasonable because Juror 8's personal experience with guns did not

4    rise to the level of "expert" evidence and was therefore permissibly related during deliberations.

5    (*Id.* at 36–39.)

6                   *i.*       *Applicable Federal Law*

7          Under the Sixth Amendment, a criminal defendant has the right to be tried by an impartial

8    jury and to confront and cross-examine the witnesses who testify against him.  *See Irvin v. Dowd*,

9    366 U.S. 717, 722 (1961); *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987).  Accordingly, a

10    verdict in a criminal case must be based solely on evidence presented at trial.  *See Turner v.*

11    *Louisiana*, 379 US. 466, 472–73 (1965) ("In the constitutional sense, trial by jury in a criminal

12    case necessarily implies at the very least that the evidence developed against a defendant shall

13    come from the witness stand in a public courtroom where there is full judicial protection of the

14    defendant's right of confrontation, of cross-examination, and of counsel.") (internal quotation

15    marks omitted).  Exposure to facts not in evidence may deprive a defendant of his "rights to

16    confrontation, cross-examination, and assistance of counsel embodied in the Sixth Amendment."

17    *Lawson v. Borg*, 60 F.3d 608, 612 (9th Cir. 1995); *Bayramoglu v. Estelle*, 806 F.2d 880, 887 (9th

18    Cir. 1986); *see also Estrada v. Scribner*, 512 F.3d 1227, 1238 (9th Cir. 2008) ("A juror's

19    communication of extrinsic facts implicates the Confrontation Clause.").

20          Habeas relief, however, is warranted on a claim of juror misconduct based on the

21    consideration of extrinsic facts only where the defendant was prejudiced by the introduction of

22    the extrinsic evidence.  *Estrada*, 512 F.3d at 1235, 1238.  In deciding whether jury misconduct

23    was prejudicial, the Court determines whether the extrinsic evidence before the jury had a

24    "substantial and injurious effect or influence in determining the jury's verdict."  *Sassounian v.*

25    *Roe*, 230 F.3d 1097, 1108 (9th Cir. 2000) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623

26    (1993)); *see also Jeffries v. Blodgett*, 5 F.3d 1180, 1189 (9th Cir. 1993) (question on habeas

27    review is whether juror misconduct deprived defendant of his or her right to fair trial).

28          The Court will apply this law to each of Petitioner's jury misconduct claims.

1                 *a)*       *Statements Concerning Petitioner's Failure to Testify*

2       A defendant in a criminal case is entitled to a jury that reaches a verdict on the basis of the

3 evidence produced at trial. *Turner*, 379 U.S. at 466; *Estrada*, 512 F.3d at 1238; *Raley v. Ylst*, 470

4 F.3d 792, 803 (9th Cir. 2006). "Evidence not presented at trial, acquired through out-of-court

5 experiments or otherwise, is deemed 'extrinsic.'" *United States v. Navarro-Garcia*, 926 F.2d

6 818, 821 (9th Cir. 1991) (citing *Marino v. Vasquez*, 812 F.2d 499, 504 (9th Cir. 1987)). When

7 the jury considers extraneous or extrinsic facts not introduced in evidence, a defendant has

8 effectively lost his Sixth Amendment rights of confrontation, cross-examination, and the

9 assistance of counsel with regard to jury consideration of the extraneous evidence. *Lawson*, 60

10 F.3d at 612.

11       However, a petitioner's failure to testify in his own defense is not extrinsic evidence

12 because that fact is apparent from the trial itself and is not obtained from outside sources. *Raley*,

13 470 F.3d at 803 (citing *United States v. Rodriquez*, 116 F.3d 1225, 1226–27 (8th Cir. 1997)).

14 Therefore, as a general rule, a jury's discussion of a defendant's failure to testify does not violate

15 the Sixth Amendment because it does not involve the receipt of extrinsic evidence. *Id.* Indeed,

16 the Ninth Circuit has specifically addressed this issue, holding:

17
18         The fact that Petitioner did not testify in his own defense is not
        extrinsic evidence. Although the jury's discussion of this issue
        clearly violated the trial court's instructions, what happened (or did
19         not happen) in the courtroom was a part of the trial, not extrinsic to
        it. We may not inquire into a jury's deliberations concerning the
20         evidence at trial.

21 *Raley*, 470 F.3d at 803 (citations omitted). Based on the foregoing authority, the Court finds it

22 cannot consider the portions of the jurors' affidavits regarding discussion of the fact that

23 Petitioner did not testify at trial and Petitioner is not entitled to relief on this claim because it

24 concerns only intrinsic jury processes. *Raley*, 470 F.3d at 803 (denying federal habeas relief

25 based upon claim that petitioner's jury during its deliberations discussed his decision not to

26 testify); *United States v. Rutherford*, 371 F.3d 634, 639–40 (9th Cir. 2004) (finding testimony

27 regarding a jury's consideration of the defendant's failure to testify to "not concern facts bearing

28 on extraneous or outside influences on the deliberation").

Regardless, even if this Court could consider those portions of the jurors' affidavits, the California Court of Appeal's denial of Petitioner's juror misconduct claim based on discussion of Petitioner's failure to testify was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of fact.  There was sufficient evidence to support the state court's denial of juror misconduct based on the "[Petitioner] must be guilty because he did not testify" statement attributed to "maybe two" unidentified jurors by Juror Nos. 2 and 6 in light of the fact that their statements were internally inconsistent, as well as contradicted by Juror Nos. 1, 3, 5, 8, 9, 10, 11, and 12.  Similarly, the state court reasonably declined to credit Juror No. 4's comment about hearing "because [Petitioner] did not testify, he must be guilty," in light of Juror No. 4's later testimony conceding this was just an impression, not an express statement he actually heard.  Thus, the state court reasonably concluded that the other comments reflected an observation that hearing Petitioner's testimony would have provided additional relevant evidence rather than an inference of guilt for Petitioner's failure to testify.

Based on the foregoing, the Court finds that the state court's decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement."  *Harrington*, 562 U.S. at 103.  Accordingly, Petitioner is not entitled to habeas relief on his second claim.

<i>b)</i> <i>Consideration of Purported Outside Expert Information<br>Regarding Gun Mechanics</i>

The Ninth Circuit has held that "a juror's past personal experiences may be an appropriate part of the jury's deliberations."  *Grotemeyer v. Hickman*, 393 F.3d 871, 879 (9th Cir. 2004).  In *Grotemeyer*, the Ninth Circuit found it was not misconduct for the jury foreperson, who was a physician, to "opine[ ] that [the defendant's] mental disorders caused him to commit his crime, and that he would receive treatment as part of his sentence."  *Id.* at 878.  As the Ninth Circuit observed, "evaluation of credibility necessarily relies on experience," and "[i]t is hard to know who is lying without some understanding, based on past personal experience, of the circumstances of the witnesses."  *Id.* at 879; *see also Hard v. Burlington Northern R.R.*, 870 F.2d

1454, 1462 (9th Cir. 1989) (denying new trial where one juror used personal knowledge of x-ray interpretation to sway others because "[i]t is expected that jurors will bring their life experiences to bear on the facts of a case"). Indeed, the Ninth Circuit has repeatedly rejected juror misconduct claims premised on a juror's expression, during deliberation, of an opinion that is based on the juror's personal experience or expertise.[8]

Here, the trial court and the California Court of Appeal found that Juror No. 8 permissibly related his own personal experience with guns during deliberations. This finding is consistent with federal law. Nor does the record reflect that Juror No. 8 held himself out as an expert or shared an opinion based on evidence not before the jury. Based on the record before this Court and given the weight of the authority in the Ninth Circuit, the Court has no basis for finding that Juror No. 8's statements regarding his personal experiences with guns constituted juror misconduct. Moreover, this Court is not aware of any holding by the Supreme Court where a juror's reliance on, or sharing of, his personal experiences to interpret testimony or evidence constitutes misconduct.

Accordingly, the Court finds the state court's denial of Petitioner's jury misconduct claim based on Juror No. 8's discussion of gun mechanics was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable finding of fact. Nor was the decision "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*,

---

[8]     *See, e.g.*, *Murray v. McEwen*, 673 F. App'x 669, 672 (9th Cir. 2016) (jurors' statements during deliberations do not constitute misconduct, because jurors are permitted to use their personal experiences during deliberations, particularly to evaluate credibility); *Rucker v. Lattimore*, 369 F. App'x 810, 813 (9th Cir. 2010) (finding no misconduct when jurors discussed their personal experiences as victims of sexual assault); *see also United States v. Wong*, 603 F. App'x 639 (9th Cir. 2015) (juror's reliance on his personal experience in the banking industry to interpret evidence introduced at trial was not improper); *United States v. Budziak*, 697 F.3d 1105, 1111 (9th Cir. 2012) (finding no juror misconduct where juror made comments referring not to extraneous evidence but to the juror's personal life experience with computers and a computer program); *cf. Bell v. Uribe*, 748 F.3d 857, 866 (9th Cir. 2014) (finding juror properly removed from jury for cause where she "did not simply bring her personal experience to bear in evaluating the evidence before her [but] [i]nstead, she returned home, compiled a definition from a dictionary, gathered data 'from her profession,' [ ] offered the information to the jury[, and] instructed the jurors to rely on her expert opinion . . . .").

1    562 U.S. at 103.  Consequently, Petitioner is not entitled to habeas relief on his third claim.

2                       C.      Trial Court's Failure to Instruct on Voluntary Intoxication

3          In his fourth claim for relief, Petitioner contends the trial court's failure to instruct on

4    voluntary intoxication deprived him of a meaningful opportunity to present a defense.  (ECF No.

5    11 at 7; *see also* ECF No. 1 at 45–46.)  Respondent argues the state court's rejection of the jury

6    instruction claim was reasonable because no substantial evidence supported the requested

7    instruction.  (ECF No. 19-1 at 39–43.)

8                              *i.      Applicable Federal Law*

9          Claims of error concerning state jury instructions are generally matters of state law that

10   are not cognizable on federal habeas review.  *See Gilmore v. Taylor*, 508 U.S. 333, 343 (1993);

11   *see also Clark v. Brown*, 450 F.3d 898, 904 (9th Cir. 2006) ("The fact that a jury instruction

12   violates state law is not, by itself, a basis for federal habeas corpus relief."), *cert. denied*, 549 U.S.

13   1027 (2006).  Rather, federal habeas relief based on a claim of instructional error is only available

14   when the petitioner demonstrates the "instruction by itself so infected the entire trial that the

15   resulting conviction violates due process."  *Estelle*, 502 U.S. at 72.

16         Where the alleged error is the failure to give an instruction, the burden on the petitioner to

17   show a due process violation is "especially heavy."  *Henderson v. Kibbe*, 431 U.S. 145, 155

18   (1977).  "It is the rare case in which an improper instruction will justify reversal of a criminal

19   conviction when no objection has been made in the trial court."  *Id.* at 154.  Indeed, where a state

20   court has rejected an instructional error claim on the merits, federal habeas relief may be granted

21   only if the state court's application of the governing Supreme Court precedent was objectively

22   unreasonable.  *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009) (citations omitted).  Since the

23   due process standard applied to claims of instructional error is a very general one, the range of

24   possible reasonable applications of that standard is substantial, and thus significant deference is

25   given to state court adjudications of such claims.  *See generally Yarborough*, 541 U.S. at 664 (in

26   assessing whether state court's adjudication of claim involved unreasonable application of clearly

27   established law, court must consider legal rule's specificity — the more general the rule, the more

28   leeway courts have in reaching outcomes in case-by-case determinations).

Under Ninth Circuit authority, a criminal defendant is only entitled to have the court instruct the jury on his theory of defense if it is supported by law and has foundation in the evidence. *Conde v. Henry*, 198 F.3d 734, 739 (9th Cir. 2000). "[I]t is not reversible error to reject a defendant's proposed instruction on his theory of the case if other instructions, in their entirety, adequately cover that defense theory." *Duckett v. Godinez*, 67 F.3d 734, 743 (9th Cir. 1995) (emphasis and quotation omitted). Further, even where a trial court errs in instructing the jury, habeas relief will only be granted where a petitioner establishes the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637.

ii.      *Analysis*

First, to the extent Petitioner contends the trial court's failure to instruct the jury on voluntary intoxication violated state law, his claim is not cognizable on federal habeas review. *See Estelle*, 502 U.S. at 71–72. As the Supreme Court has stated, federal habeas relief is not available for alleged error in the application of state law, and habeas corpus cannot be used in federal court to try state issues *de novo*. *Milton v. Wainwright*, 407 U.S. 371, 377 (1972); *see also Waddington*, 555 U.S. at 192 n.5 ("[W]e have repeatedly held that 'it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'"). Accordingly, the question of whether the trial court violated state law in failing to give such jury instructions is not cognizable in this federal habeas proceeding.

Similarly, while the United States Supreme Court has held that the failure to instruct on a lesser included offense in a capital case is constitutional error if there was evidence to support the instruction, *Beck v. Alabama*, 447 U.S. 625, 638 (1980), there is no clearly established federal constitutional right to lesser included instructions in non-capital cases. *See United States v. Rivera-Alonzo*, 584 F.3d 829, 834 n.3 (9th Cir. 2009); *see also Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir. 2000) (declining to extend *Beck* to non-capital cases); *Windham v. Merkle*, 163 F.3d 1092, 1106 (9th Cir. 1998) ("[T]he failure of a state trial court to instruct on lesser included offenses in a non-capital case does not present a federal constitutional question."); *James v. Reese*, 546 F.2d 325, 327 (9th Cir. 1976) ("Failure of a state court to instruct on a lesser offense fails to present a federal constitutional question and will not be considered in a federal habeas

21

corpus proceeding").  Accordingly, the Court finds the state court's decision to deny Petitioner's claim was not contrary to clearly established authority as set forth in the *Beck* decision.  *See also Solis*, 219 F.3d at 929 (habeas relief for failure to instruct on lesser-included offense in non-capital case is barred by the holding in *Teague v. Lane*, 489 U.S. 28 (1989), because it would require the application of a new constitutional rule).

Finally, to the extent Petitioner argues the trial court's ruling deprived him of a meaningful opportunity to present a defense, Petitioner is not entitled to habeas relief because the California Court of Appeal reasonably found he presented no evidence to show that his level of intoxication prevented him from forming any required mental state.  Under California law, a defendant is entitled to a voluntary intoxication instruction only where there is "substantial evidence of the defendant's voluntary intoxication and the intoxication affected the defendant's actual formation of specific intent."  *People v. Williams*, 16 Cal. 4th 635, 677–78 (1997) (quotation omitted).  Because of the weakness of Petitioner's intoxication evidence, it was reasonable for the trial court to deny the instruction on voluntary intoxication.  Because Petitioner was not entitled to the instruction under state law, the state court reasonably determined that any error in failing to give the instruction was harmless and Petitioner's due process rights were therefore not violated.  *See Claborne v. Lewis*, 64 F.3d 1373, 1380–81 (9th Cir. 1995) (finding no harmful constitutional error from failure to instruct on intoxication where defendant's evidence of intoxication to negate mental state requirement is "minimal"); *Brecht*, 507 U.S. at 637.

Based on the foregoing, the Court finds the state court's denial of Petitioner's jury instruction claim was not contrary to or an unreasonable application of clearly established federal law, nor was it based on an unreasonable finding of fact.  Accordingly, Petitioner is not entitled to habeas relief on his fourth claim.

### D.  Coerced Verdict

In his fifth claim, Petitioner contends the trial court erred when it instructed the jury to continue deliberations after the inadvertent identification of two jurors as holding out for a not guilty verdict because such instructions were unduly coercive.  (ECF No. 11 at 8.)  Respondent argues the state court's rejection of the coerced verdict claim was reasonable because refusing to

1  declare a mistrial after eight to ten hours of deliberations was not unreasonable in light of the

2  length of the trial, number of witnesses and experts, and volume of records.  (ECF No. 19-1 at

3  43.)

4           *i.*       *Applicable Federal Law*

5        "Any criminal defendant . . . being tried by a jury is entitled to the uncoerced verdict of

6  that body." *Lowenfield v. Phelps*, 484 U.S. 231, 241 (1988).  A jury verdict that has been reached

7  because of the judge's coercive statements to the jury denies the defendant his right to a fair trial

8  and impartial jury.  *Id.*  Nonetheless, the Supreme Court permits trial judges to pose questions and

9  give supplemental charges to deadlocked juries in the hope of encouraging jury verdicts without

10  coercing them.  *See Allen v. United States*, 164 U.S. 492 (1896).  "Whether the comments and

11  conduct of the state trial judge infringed [a defendant's] due process right to an impartial jury and

12  fair trial turns upon whether 'the trial judge's inquiry would be likely to coerce certain jurors into

13  relinquishing their views in favor of reaching a unanimous decision.'"  *Jimenez v. Myers*, 40 F.3d

14  976, 979 (9th Cir. 1994) (quoting *Locks v. Sumner*, 703 F.2d 403, 406 (9th Cir. 1983)).  In

15  making this determination, the reviewing court must consider the totality of the circumstances

16  and decide whether the trial court's actions and statements were coercive.  *See Jimenez*, 40 F.3d

17  at 979; *see also Locks*, 703 F.2d at 406–07 ("[T]he inquiry by the judge must be viewed in light

18  of the context in which it was made, not in isolation.").  Factors relevant to this evaluation

19  include: (1) the form of the instruction; (2) the duration of post-charge deliberation; (3) the total

20  time of deliberation; and (4) other indicia of coercion.  *See United States v. Wills*, 88 F.3d 704,

21  717 (9th Cir. 1996).

22          *ii.*       *Analysis*

23        A review of the record indicates "the California Court of Appeal reviewed all the facts and

24  considered the supplemental charge in its context and under all the circumstances in holding that

25  it was not coercive." *Parker v. Small*, 665 F.3d 1143, 1148 (9th Cir. 2011).  As a result, "this

26  Court must give deference to the California Court of Appeal's judgment" as to a heavily fact-

27  bound ruling.  *Id.*  Further, even if the matter is considered *de novo* rather than with the deference

28  AEDPA would require, the claim fails.

23

Petitioner's claim fails because the totality of the circumstances shows the trial court took no action that could constitute coercion. First, the supplemental instruction here is more neutral — and thus has less potential for coercion — than those of which the Supreme Court has approved. In *Allen v. United States*, for example, the Supreme Court approved of a supplemental instruction that singled out minority jurors, instructed them to consider the views of those in the majority, and required the minority jurors to thereafter ask themselves whether their own views were reasonable. 164 U.S. 492 (1896). Here, by contrast, the trial court fashioned its supplemental instruction in a patently neutral manner. (*See* ECF No. 19-14 at 221–223.) Unlike the instruction in *Allen*, the supplemental instruction here did not single out minority jurors and force them and them alone to consider whether their views were reasonable in light of the views of the jurors in the majority. Rather, the trial court's supplemental instruction urged all the jurors — regardless of whether they were in the majority or the minority — to reconsider their respective views and to urge their fellow jurors to re-examine and change their views: "You should not hesitate to change a view you once held if you are convinced or to suggest other jurors change their views if you are convinced they are wrong." (*Id.* at 222.) Furthermore, the trial court never instructed the jurors that they had to reach a verdict. To the contrary, after instructing the jurors that they must each "decide the case for [themselves]," the trial court instructed the jurors to "deliberate with the goal of arriving at a verdict on the charge, *if you can do so without violence to your individual judgment*." (*Id.* (emphasis added).) Moreover, the trial court intentionally omitted any language setting a time limit or indicating the jurors would be forced to deliberate indefinitely. (*See id.* at 218–19.) On this record, the Court finds no juror on the panel would reasonably interpret this instruction as an order to return a verdict, let alone a guilty verdict. *Cf. Jimenez*, 40 F.3d at 981 ("The trial court's failure to counter-balance the implication of its questions and comments by instructing the hold-out juror not to surrender his or her sincere convictions strongly supports the conclusion that the jury was impermissibly coerced to render a unanimous verdict.").

Nor does the time that the jury deliberated after receiving the charge, in relation to the total time of deliberation, suggest a due process violation. The jury initially claimed they were

24

deadlocked after approximately eight to ten hours of deliberations, following a seven-day trial

with 34 witnesses, some of whom were re-called for various reasons.  (ECF No. 19-14 at 208.)

The instruction was given on the third day of deliberations, after the jury returned from a three-

day weekend.  (*See id.* at 205, 209.)  After receiving the additional instruction, the jurors did not

immediately return with a guilty verdict.  Instead, they continued to deliberate for an additional

two hours — at which point they requested "a more clear definition or example of second degree

murder and voluntary manslaughter" — and then reached their verdict three hours later, thus

deliberating for a total of approximately five hours.  (*See id.* at 224–27.)  This chronology does

not indicate that the instruction had a coercive effect.  Indeed, the Ninth Circuit has repeatedly

found no coercion occurred where the length of deliberations between instruction and verdict was

comparable to or less than that in this case.  *See*, *e.g.*, *United States v. Easter*, 66 F.3d 1018, 1023

(9th Cir. 1995) (two and half hours); *United States v. Bonam*, 772 F.2d 1449, 1450–51 (9th Cir.

1985) (per curiam) (one-and-a-half hours); *United States v. Beattie*, 613 F.2d 762 (9th Cir. 1980)

(three-and-a-half hours), *cert. denied*, 446 U.S. 982 (1980); *United States v. Lorenzo*, 43 F.3d

1303, 1307, n. 3 (9th Cir. 1995) (five-and-a-half hours); *compare Weaver v. Thompson*, 197 F.3d

359, 366 (9th Cir. 1999) (coercion found when jury returned with unanimous verdict five minutes

after receiving *Allen* charge).  Moreover, the break from deliberations following the supplemental

instruction reduces the potential for coercion.  *See United States v. Steele*, 298 F.3d 906, 911 (9th

Cir. 2002) (finding no coercion where jury returned verdict 30 minutes after returning from a

weekend recess because it "could merely reflect that the jurors came to a resolution during a

weekend when they individually pondered the evidence.  The weekend interval itself probably

would have diluted any coercive effect of an *Allen* charge").

Finally, the fact that the trial court knew that the jury was split ten to two in favor of

conviction when the supplemental instruction was given does not render the instruction coercive.

To be sure, the trial court did not inquire as to which way the jury was split on the question of

Petitioner's guilt.  Indeed, the jury foreperson accidentally provided such information after the

trial court expressly stated, "I don't want to know one way or the other" and asked for "[j]ust two

numbers."  (ECF No. 19-14 at 197.)  Nonetheless, the Supreme Court has never held that reversal

is warranted where, as here, a trial court gives a supplemental instruction after inadvertently learning the nature of the numerical split of a deadlocked jury.  Given the lack of Supreme Court precedent regarding this issue, the state court's rejection of Petitioner's challenge could not have been an unreasonable application of clearly established federal law.  *See Carey*, 549 U.S. at 77 (where Supreme Court precedent gives no clear answer to question presented, "it cannot be said that the state court 'unreasonab[ly] appli[ed] clearly established Federal law'").

Furthermore, faced with similar or identical circumstances, federal courts of appeal have routinely held that a trial court commits no error in giving a more one-sided supplemental instruction than the one given here.  *See*, *e.g.*, *United States v. Sanders*, 415 F.2d 621, 629–32 (5th Cir. 1969) (holding that trial court did not err in giving *Allen* charge despite knowing jury was split eleven to one in favor of conviction where foreman defied court's order and informed court of nature of jury's numerical split); *United States v. Gabriel*, 597 U.S. 95, 101 (7th Cir. 1979) (trial court properly gave modified *Allen* instruction after jury declared itself "hung" eleven to one against defendant); *United States v. Robinson*, 560 F.2d 507, 517 (2d Cir. 1977) (trial court did not err in giving *Allen* charge and then modified *Allen* charge where it learned before both charges that jury was deadlocked eleven to one in favor of conviction); *see also United States v. Frost*, 125 F.3d 346, 374–76 (6th Cir. 1997) (trial court did not err in giving *Allen* charge after juror indicated she was in the minority and she favored defense).

In short, the totality of the circumstances does not suggest that the trial court's supplemental instruction caused any juror to relinquish his or her views in favor of reaching a unanimous decision.  The court of appeal's rejection of Petitioner's claim was neither contrary to, nor an unreasonable application of, clearly established federal law.  Nor was the decision "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement."  *Harrington*, 562 U.S. at 103.  Accordingly, Petitioner is not entitled to habeas relief on his fifth claim.

E.     Denial of Petition for Resentencing (Cal. Pen. Code § 1170.95)

Petitioner's sixth claim arises from his amended petition only.  In his sixth claim for relief, Petitioner contends the trial court erroneously denied his Penal Code § 1170.95 petition for

1    resentencing.  (ECF No. 11 at 1–2.)  Respondent argues the claim must be dismissed because it is

2    unexhausted and a petitioner cannot state a federal habeas claim based on a change in California

3    law.  (ECF No. 19-1 at 52–53.)  Moreover, Respondent argues the claim fails on the merits

4    because Petitioner's argument is factually inaccurate.  (*Id.* at 53.)  For the reasons discussed

5    herein, the Court finds Petitioner's claim is unexhausted and therefore does not reach

6    Respondent's remaining arguments.

7    　　　　Under 28 U.S.C. § 2254(b), habeas relief may not be granted unless a petitioner has

8    exhausted the remedies available in state court.  Exhaustion requires that the petitioner's

9    contentions be fairly presented to the state courts, *Ybarra v. McDaniel*, 656 F.3d 984, 991 (9th

10   Cir. 2011), and disposed of on the merits by the highest court of the state, *Greene v. Lambert*, 288

11   F.3d 1081, 1086 (9th Cir. 2002).  As a matter of comity, a federal court will not entertain a habeas

12   petition unless the petitioner has exhausted the available state judicial remedies on every ground

13   presented in it.  *See Rose v. Lundy*, 455 U.S. 509, 518 (1982).  Petitioner has the burden of

14   pleading exhaustion in his habeas petition.  *See Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th

15   Cir. 1981).

16   　　　　Here, Petitioner asserts in his amended petition that he "newly exhausted" his claim

17   regarding the denial of his petition for resentencing pursuant to § 1170.95.  (ECF No. 11 at 1–2.)

18   Contrary to this assertion, however, an independent review by the Court reveals no such state

19   court challenge was ever filed.  Moreover, Respondent also highlights this issue in the Answer

20   (*see* ECF No. 19-1 at 52), but Petitioner fails to address the point in his Traverse, thus apparently

21   conceding the point.  Accordingly, this claim is unexhausted and therefore DISMISSED.

22   　　　　　　　　F.　　Certificate of Appealability

23   　　　　Having found that Petitioner is not entitled to habeas relief, the Court now turns to the

24   question of whether a certificate of appealability should issue.  *See* Fed. R. Civ. P. 11, Rules

25   Governing § 2254 Cases.  A state prisoner seeking a writ of habeas corpus has no absolute

26   entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in

27   certain circumstances.  *Miller-El*, 537 U.S. at 335–36.  The controlling statute in determining

28   whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

(a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.

(b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.

(c) (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

(B) the final order in a proceeding under section 2255.

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a habeas petition on the merits, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of [the petitioner's] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 537 U.S. at 338.

In the present case, the Court concludes that reasonable jurists would not find the Court's determination that Petitioner's federal habeas corpus petition should be denied debatable or wrong, or that the issues presented are deserving of encouragement to proceed further. Petitioner has not made the required substantial showing of the denial of a constitutional right. Therefore, the Court declines to issue a certificate of appealability.

///

1

**IV.    CONCLUSION**

2

For the foregoing reasons, Petitioner's First Amended Petition for Writ of Habeas Corpus

3  is hereby DENIED.  The Court declines to issue the certificate of appealability referenced in 28

4  U.S.C. § 2253.

5

The Clerk of the Court is directed to close this case.

6

IT IS SO ORDERED.

7  DATED:  December 6, 2021

8

9

10

Troy L. Nunley
United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28